IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

JAMES EDWARD WHITT,

    Plaintiff,

V.                                  CIVIL ACTION NO. 3:08-1451

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM ORDER

In this action, filed under the provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his applications on May 25, 2006, alleging disability commencing April 26, 2002, as a consequence of lower back injury to L4 and L5 vertebrae with degenerative disc disease. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was thirty years of age and had obtained a General Equivalency Diploma. His past relevant employment experience consisted of work as a

laborer, stock clerk, lumber stacker, laundry worker and truck driver. In his decision, the administrative law judge determined that plaintiff suffers from status-post microscopic diskectomy at L4/5, degenerative changes at L4/5 and scoliosis, impairments he found severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

Plaintiff contends the administrative law judge's evaluation of his credibility was not thorough enough to comply with the regulations. He notes that 20 C.F.R. §§ 404.1529 and 416.929 list factors considered relevant in evaluating a claimant's symptoms, such as pain. These factors include daily activities; location, duration, frequency and intensity of pain or other symptoms; what causes or aggravates pain; information about medication such as the type, dosage, effectiveness and side effects; treatment undertaken other than medication; measures a claimant uses other than medication to alleviate pain or other symptoms; and "other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7P.

In her decision, the administrative law judge set forth plaintiff's testimony in significant detail.[3] In contrast, her reasoning for finding that testimony less than fully credible was set out in a

---

[1]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

[3]The administrative law judge's recitation of his testimony was two pages long.

2

single paragraph. Her first point was that plaintiff did not pursue physical therapy immediately after his work injury in April 2002. She noted plaintiff's testimony that problems with Workers' Compensation were to blame for the delay, but she clearly disbelieved his explanation. She does not, however, supply any information discrediting plaintiff's testimony in this regard, and the Court can find none. Second, she notes that, after surgery in 2004,[4] x-rays and MRI did not show evidence of nerve root impingement "or any significant findings that would cause the pain the claimant reported." An MRI from April 12, 2005 shows degenerative changes in the L4-5 disc with evidence of disc space narrowing and some edema, particularly in the center part of the disc. Also documented is scar tissue at this level and degenerative facet hypertrophy and bulging of the L4-5 disc with moderate neural foraminal stenosis on the left. While there was no residual or recurrent disc herniation or "definite" L-4 nerve root impingement, for the administrative law judge to express her opinion that these were not "significant" findings and that they would not cause the pain plaintiff reported appears to border on a medical judgment beyond her expertise.[5] The administrative law judge also notes that the motor vehicle accident in which plaintiff was involved in June "2006"[6] could be "possibly contributing to his current level of pain." These statements are all that the administrative law judge cites as support for her determination that plaintiff's credibility was "only fair at best." While some of the factors in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) were

---

[4] The administrative law judge erroneously identifies the surgery as occurring in April rather than February of 2004.

[5] See Edwards v. Bowen, 672 F.Supp. 230, 236 (E.D. N.C. 1986); Tyler v. Weinberger, 409 F.Supp. 776, 788 (E.D. Va. 1976); Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

[6] This accident actually occurred in 2005.

covered in plaintiff's testimony, there is no indication whether the administrative law judge considered them or how they influenced her credibility finding.

      The Court observes that the administrative law judge's conclusion about plaintiff's credibility is also at odds with the opinion of one of the state agency medical advisors who reviewed the evidence and concluded plaintiff's allegations were "mostly credible." It also ignores the similarities between the pre-surgery clinical findings documented by Dr. Ignatiadis, plaintiff's neurosurgeon, and those of Dr. Barefoot, the consultative examiner, who evaluated plaintiff on August 16, 2006, over two years after surgery.

      On October 29, 2002, six months after plaintiff's injury, an MRI scan was interpreted as showing a disc herniation on the left at the L4-5 level with nerve root impingement and central annulus bulging. During his exam of plaintiff on January 7, 2004, Dr. Ignatiadis reported clinical findings of a positive straight leg raising test, weakness of the extensor hallucis longus muscle, and decreased sensation in the L-5 distribution.[7] One month later, when examining plaintiff just prior to performing microscopic diskectomy surgery, this physician reported a fifty percent loss of range of motion in the back as well as positive straight leg raising and the muscle weakness previously noted. While plaintiff related to his doctors that the surgery eliminated his left leg pain initially, examinations continued to show he still had back pain with range of motion diminished by fifty percent and positive straight leg raising tests. Eventually, the left leg pain also returned.

      Although post-surgery MRI's from April 12, 2005 and August 26, 2005 did not reveal clear evidence of nerve root impingement at the L4-5 level, they did show a bulging annulus and

---

[7]This physician notes this is plaintiff's second visit and that he had written a letter in May of 2003 to Dr. Kingston, plaintiff's treating physician; however, this letter is not contained in the record.

degenerative changes as well as scar formation which the latter MRI identified as surrounding the L4-5 nerve root. Dr. Jules Barefoot, who examined plaintiff at the request of the Commissioner on August 16, 2006, found "significant[ly]" diminished range of motion in the back, weakness in the left leg, muscle atrophy in the left calf and thigh, decreased reflexes on the left and a poor ability to squat. Plaintiff had a cane with him at this appointment and was observed to be able to ambulate only "short distances" without it. Reports from Dr. Kingston reflect plaintiff did experience increased pain after a June 2005 car accident, although the subsequent MRI did not show any new acute condition. Plaintiff testified he had wanted to see his neurosurgeon again, but could not afford to do so.

In light of the evidence, which reflects a significant number of abnormal clinical findings, and the administrative law judge's conclusion that plaintiff's medically determinable impairments could reasonably be expected to produce his symptoms, the Court finds that the conclusions relative to plaintiff's credibility clearly do not satisfy the administrative law judge's "'duty of explanation' when making determinations about the credibility of a claimant's testimony," Smith v. Heckler, 782 F.2d 1176, 1181 (4th Cir. 1986), and remand is necessary for a re-examination of the evidence and re-evaluation of plaintiff's credibility.

Additionally, on remand, the administrative law judge should include plaintiff's need to use a cane for balance in residual functional capacity findings and in questioning the vocational expert. While Dr. Barefoot reported plaintiff could walk without the cane, he noted it was for "short distances," a factor which clearly needs to be considered in determining limitations on plaintiff's ability to stand and walk[8] as well as what, if any, alternative work he could perform.

---

[8]In her residual functional capacity findings, the administrative law judge did not specify any limitation on plaintiff's abilities to stand and walk, although such is established by the evidence, and she did add a limitation in this regard to her hypothetical questions.

Also on remand, the parties should be permitted to submit additional, relevant evidence.

On the basis of the foregoing, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this Memorandum Order.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: March 16, 2010

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE